## Crawford Estate

*Carlyle M. Tucker,* for administrator.

*Frederick Fiegenberg,* for Commonwealth.

KLEIN, P. J., February 3, 1958.—Laura M. Crawford died intestate on May 25, 1956. Letters of administration were granted to Carlyle M. Tucker, a member of the Philadelphia bar. In the statement of proposed distribution Mr. Tucker avers that decedent was not married and was not survived by issue. He also states that there are no known heirs or next of kin.

The auditing judge is not satisfied, however, with the nature or extent of the investigation made to locate heirs. The balance for distribution in the present case is in excess of $10,000, and the auditing judge is of the opinion that a more thorough search should be made.

Pennsylvania Supreme Court Orphans' Court rule 69.4 states:

"Rule 69.4. Report by Fiduciary.

"Whenever it shall appear at the audit of an account that the identity or whereabouts of a distributee is unknown, or that if distribution is made the beneficiary would not have the actual benefit, use, enjoyment or control of the money or other property awarded to him and the court is requested to withhold distribution, or to make a provisional award thereof to the accountant, to the Clerk of the Orphans' Court, or to the State Treasury through the Department of Revenue, or in any manner other than to the distributee or his nominee, the fiduciary or his counsel shall submit to the court or auditor, as the case may be, a written report outlining the investigation made by him and the facts upon which he bases his request. The report shall be in such form and be filed at such place and time as shall be prescribed by general rule or special order of the local Orphans' Court."

Orphans' Court local rule 69.5 supplements the above rule as follows:

"The report required by Rule 69.4 shall be submitted at the audit, and shall include, substantially, the following:

"(a) Unknown Distributee. If it appears that the identity or whereabouts of a distributee is unknown, or there are no known heirs, the fiduciary shall submit a written report at the audit, verified by affidavit of the fiduciary or his counsel, in which shall be set forth

"(1) the nature of the investigation made to locate the heirs of the decedent, in complete detail; and

"(2) in cases of intestacy, or where there are no known heirs, a family tree, as complete as possible under the circumstances, supported by such documentary evidence as the fiduciary has been able to obtain.

"The term 'investigation', as used in this rule, shall include inquiry of or as to as many of the following as may be pertinent and feasible: residents of the household in which the decedent resided; friends and neighbors; labor union membership; places of employment; social, fraternal, or beneficial organizations; insurance records; church membership; school records; social security, Veterans' Administration, or military service records; naturalization records, if not native born; and such other sources of information as the circumstances may suggest."

It appears to us that the administrator has not complied with the provisions of this rule.

Laura M. Crawford, decedent, had been declared an incompetent by the Court of Common Pleas No. 4 as of March term, 1950, no. 5983. Her brother, William Crawford, who predeceased her, was also adjudicated an incompetent by the Court of Common Pleas No. 2 as of March term, 1950, no. 5754. An examination of the record in these cases discloses that the petitions were filed by Earl Klink, who stated that he was a close friend of Laura and William Crawford and members of their family. An effort should be made to locate Mr. Klink, as it is probable that he would be able to furnish important information with respect to decedent's family. The administrator has relied entirely upon information obtained from conferences with Norris S. Barratt, a respected member of our bar, who was appointed guardian of the estates of both incompetents, and with the guardian's attorney, Dewey Hoffman. Both of these gentlemen should be requested to appear before the auditing judge to supply whatever information they have concerning the family background of this decedent.

It may also be advisable for the administrator to engage a competent investigator or genealogist to make

an investigation to locate decedent's next of kin. The costs of such an investigation, if and when approved by the auditing judge, would be a proper charge to be borne by the estate. . . .

When this case was called for audit, Frederick Fiegenberg, Special Assistant Attorney General, entered an appearance on behalf of the Commonwealth of Pennsylvania, claiming the balance of principal and income under section 3(6) of the Intestate Act of April 24, 1947, P. L. 80. In the opinion of the auditing judge, however, the Commonwealth should have claimed this fund, without escheat, under section 1314 of the Fiduciaries Act of 1949, not as an heir under section 3(6) of the Intestate Act.

The Commonwealth should claim as an heir under the Intestate Act only in cases in which a family tree has been established and it is clear that there are no surviving relatives of decedent, or that all are more remote than first cousins.

As the auditing judge apprehends the state of the law in these matters, the Commonwealth's claim as a so-called "heir" under section 3(6) of the Intestate Act should only be asserted in cases where positive, or reasonably conclusive evidence establishes the failure of heirs. Where, as here, there is simply a lack of evidence, the Commonwealth should merely claim the fund for payment into the State treasury without escheat, leaving the door open for the possible future discovery of qualified heirs.

In a case such as this, in fairness to possible next of kin, the award should be to the Commonwealth as a stakeholder, so that if next of kin appear in the future, they may receive the fund which is rightfully theirs. The Commonwealth of Pennsylvania, as a sovereign State, is presumed to be interested in protecting the relatives of its citizens. The purpose of the escheat laws

is certainly not to raise revenue for the Commonwealth by depriving a decedent's heir to their lawful inheritance. The representatives of the Commonwealth should make every reasonable effort to see that the next of kin are located and receive the funds to which they are entitled. See Rhodes and Hannebauer Estate, 71 D. & C. 330 (1959). . . .

The account filed by the administrator in the present estate indicates that the balance of principal consists of $10,293.29 in cash and "old jewelry" having an appraised value of $400.78. Section 12 of the Intestate Act of 1947, as added by the Act of February 10, 1956, P. L. (1955) 1037, sec. 3, reads as follows:

"Property Distributable to the Commonwealth.— When the estate is distributable to the Commonwealth, as statutory heir under the provisions of this act, it shall be reduced to cash in all cases by the personal representative, and awarded by the court in distribution to the Commonwealth, and paid by the personal representative through the Department of Revenue into the State Treasury."

It is clear that the administrator has not complied with the aforesaid section of the act.

For the reasons recited above, the audit is continued generally.